# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| HOLLY HILL MALL, LLC, | ) |
| Plaintiff, | ) |
| v. | ) 1:23CV547 |
| DUNHAM'S ATHLEISURE CORP. d/b/a DUNHAM'S SPORTS, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff, Holly Hill Mall, LLC (hereinafter "Holly Hill Mall") brought this action against Defendant, Dunham's Athleisure Corporation d/b/a Dunham's Sports (hereinafter "Dunham's Sports"). (ECF No. 8.) Holly Hill Mall brought a claim seeking relief for an alleged Breach of Contract and also seeking Declaratory Relief. (*Id.*) Dunham's Sports subsequently brought a counterclaim also seeking Declaratory Relief. (ECF No. 11.) Before the Court is Dunham's Sports' Motion for Summary Judgment. (ECF No. 33 (Sealed)).[1]

---

[1] Because the parties filed joint motions to seal certain information in their respective briefs in support of and opposition to the instant motion, (ECF Nos. 37, 42), the parties filed both sealed and redacted versions of the same. The Defendant's sealed Motion for Summary Judgment, accompanying brief, and exhibits therein, (ECF Nos. 33, 34), are duplicated in redacted form, (ECF Nos. 35, 36). Similarly, Plaintiff's Response, (ECF No. 41), has a redacted version, (ECF No. 40). The Court has granted the parties' Motions to Seal by separate Order. Thus, in this Order, while this Court is addressing the outstanding motion, (ECF No. 33), it will refer to the substance of the redacted briefs and exhibits.

Plaintiff filed its Response. (ECF No. 40.)[2] For the reasons stated herein, Dunham's Sports' Motion for Summary Judgment will be denied.

## I. BACKGROUND

Holly Hill Mall is a limited liability company organized under the laws of the state of North Carolina that operates a mall in Burlington, North Carolina (hereinafter "the Shopping Center"). (ECF No. 36-6 at 6; *see also* ECF No. 8 ¶¶ 1, 3.) Dunham's Sports is a retail company that sells a variety of sporting goods in over 250 stores across 25 states. (ECF No. 36-1 at ¶ 6.) Dunham's Sports is organized under the laws of the state of Delaware, and its principal place of business is in Waterford, Michigan. (ECF No. 36-6 at 6.) In January 2012, the parties executed a lease agreement (hereinafter "the Lease") governing Dunham's Sports' rental of a parcel in the Shopping Center. (*Id.* at 6, 15.) The parties based the Lease on a form lease drafted by Dunham's Sports and negotiated several of the Lease terms.[3] (ECF Nos. 36-1 ¶ 9; 36-2 at 20:21-23.) The Lease term began February 2012, to last for seven years, with options to renew the lease for four consecutive terms that were each five years long. (ECF No. 36-6 at 6, 10.) According to the Lease, Dunham's Sports was obligated to pay "Gross Rent"[4] and, under certain conditions, "Percentage Rent"[5] to Holly Hill Mall. (*Id.* at 7.)

---

[2] For reasons set out below, this filing will be construed as a Response to Dunham's Sports' Motion for Summary Judgment rather than a cross-motion for summary judgment.

[3] A rule of contract interpretation under North Carolina law is that a written contract is construed against the party who drafted it. *State v. Philip Morris USA Inc.*, 618 S.E.2d 219, n. 14 (N.C. 2005) (citation omitted). However, the parties agreed in their lease that "the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party, shall not be employed." (ECF No. 36-6 at 13.)

[4] Gross Rent is defined as the monthly rent that Dunham's Sports owed to Holly Hill Mall regardless of Dunham's Sports gross sales for any lease year. (ECF No. 36-6 at 7.)

[5] Percentage Rent is defined as annual rent that Dunham's Sports owed to Holly Hill Mall if Dunham's Sports' gross sales during a lease year exceeded a certain number. (*Id.*) The amount of

2

The central issue before this Court is whether Dunham's Sports owes Holly Hill Mall additional rent based on certain provisions of the Lease. The parties, however, dispute how to construe the sections of the Lease that pertain to Dunham's Sports' co-tenants in the Shopping Center. The section of the Lease that exclusively pertains to co-tenancy (hereinafter "the Co-Tenancy Clause") is as follows:

> Tenant has entered into this Lease based on the representation by Landlord that Co-Tenants, Sears and fifty percent (50%) of the small shop space (herein, "Co-Tenants" are open for business in the Shopping Center in which the Demised Promises is located. If at any time during the term of this Lease and any extensions thereof, Landlord or Co-Tenant terminate its lease, vacate the Shopping Center or cease to conduct its operation in the Shopping Center, and is not replaced with, a retail tenant of the same size within one hundred eighty (180) days of such event or if fifty percent (50%) of the small shop space is not occupied by retail tenants, Tenant shall have the right, at its option, to terminate and cancel this Lease upon giving Landlord thirty (30) days written notice of termination, and upon such termination and cancellation, Tenant shall be automatically relieved of and from any and all liabilities and obligations under this Lease. Furthermore, Tenant's only obligation with respect to Gross Rent shall be the payment of the lesser of (i) one-half (1/2) the Base/Gross Rent (with no reduction to the Percentage Rent Breakpoint) or (ii) two percent (2%) of Tenant's gross sales. Tenant's right under this Article shall not be exclusive of any other rights or remedies that Tenant may have under this Lease.

(ECF No. 36-6 at 9.) The parties negotiated the terms of the Co-Tenancy Clause, specifically the percentage of small shop space that qualified as a Co-Tenant. (*Compare* ECF No. 36-4 at 10 *with* ECF No. 36-6 at 9.) The Lease does not define the Clause term "size", nor does it define what a Co-Tenant the "same size" as Sears would be. However, the parties make arguments about how these terms are to be defined.

As early as September 2017, Holly Hill Mall notified Dunham's Sports in writing that the Sears property would be demolished and replaced with a Publix. (ECF No. 36-26 at 2.) Holly Hill Mall notified Dunham's Sports of this information in writing at least twice following

---

Percentage Rent owed would be equal to five percent of Dunham's Sports' gross sales that year. (*Id.*)

3

the original notification, in October 2018 and February 2019. (ECF Nos. 36-27 at 2; 36-28 at 2.) In the parties' February 2019 communication, Holly Hill Mall specifically notified Dunham's Sports that the deal had closed. (ECF No. 36-28 at 2.) None of these emails represent the planned size of Publix, when Sears would close or vacate the premises, or when Publix would open. (*See* ECF Nos. 36-27; 36-28.)

In July 2019, the parties proceeded to negotiate the first option to extend the Lease. (*See* ECF Nos. 36-9 at 2; 36-10 at 2.) In anticipation of its upcoming option to renew its' lease, Dunham's Sports wrote to Holly Hill Mall to report that its store in the Shopping Center was experiencing a "negative sales trend" that was "extremely concerning," with "overall sales [that ran] significantly below the chain average." (ECF No. 36-9 at 2.) Given this "very deep negative turn" Dunham's Sports proposed to exercise this upcoming renewal option, but with an amendment to significantly reduce its Gross Rent owed to Holly Hill Mall. (*Id.*) Holly Hill Mall proposed an alternate reduction in Gross Rent, noting that "retail storefront sales are down nationwide" but acknowledging Dunham's Sports "decline in sales." (ECF No. 36-10 at 2.) Following further negotiations, on July 25, 2019, the parties executed a document that exercised the first lease renewal option and incorporated reductions in Gross Rent and Percentage Rent due from Dunham's Sports (hereinafter "the Amended Lease terms"). (ECF No. 36-11 at 2–3.) The vast majority of the terms of the Lease were not amended by this document, including the Co-Tenancy Clause. (*See id.* at 3.)

On January 15, 2020, Sears ceased operations in the Shopping Center, vacating the premises "several weeks later." (ECF No. 36-29 at 4.) The record reflects that from January 2020 until March 2020, Dunham's Sports paid the full amount of Gross Rent due. (*See* ECF No. 8 ¶¶ 30–31, 33–35.) In April 2020, Dunham's Sports asked Holly Hill Mall to lower its

rent by half because of the COVID-19 pandemic and its adverse effect on its business. (ECF No. 8 ¶¶ 33–34; *see* ECF No. 11 ¶¶ 33–34.) Holly Hill Mall agreed and from April 2020 until May 2020 it reduced Dunham's Sports monthly Gross Rent obligations by half. (ECF No. 36-12 at 2; *see also* ECF No. 8 ¶ 35; ECF No. 11 ¶ 35.) There are no allegations that Dunham's Sports failed to pay the half-rent from April until May 2020 or the full amount of rent due from June to August 2020.

As of July 13, 2020, one-hundred and eighty days had passed since Sears ceased operations in the Shopping Center. On August 26, 2020, Dunham's Sports sent a letter to Holly Hill Mall as "written notice of the co-tenancy violation . . . due to the closure of Sear's[sic] at the mall." (ECF No. 36-7 at 2.) In that letter, Dunham's Sports also noted that it "reserve[d] all rights and remedies under the Lease due to the co-tenancy violation, including its right to reduce rent in accordance with the Lease." (*Id.*) A representative from Holly Hill Mall sent an email to a Dunham's Sports representative responding to the reduced rent, referencing the impending Publix development and Holly Hill Mall's previous reduction in rent to Dunham's Sports due to COVID-19. (*See* ECF No. 36-12 at 2.) Nevertheless, beginning in September 2020, Dunham's Sports began paying reduced rent according to the formula listed in the Co-Tenancy Clause of the Lease. (ECF No. 36-2 at 84:16-23.)

On December 8, 2021, Publix opened in the area Sears once occupied. (ECF No. 36-29 at 4.) Ten other businesses have since opened in the same area, with the earliest tenant opening on December 7, 2021, and the latest opening in about February 2024. (*Id.* at 4, 5.) Publix's square footage is 49,098 square feet and Sears occupied 65,000 square feet. (*Id.* at 5.) The other ten businesses vary in square footage and none of these businesses individually or collectively are the same square footage as Sears. (*See id.*) However, when combined, Publix

5

and the ten other businesses now encompass an area of square footage that is greater than Sears.  (*See id.*)  Since December 2021, Dunham's Sports has continued to pay reduced rent according to the formula listed in the Co-Tenancy Clause of the Lease.  (*See* ECF No. 36-2 at 84:16-23.)  Dunham's Sports maintains the Co-Tenancy Clause is being violated.  (ECF Nos. 36-13 at 2; 36-18 at 2.)  Holly Hill Mall maintains that Dunham's Sports owes it the full amount of Gross Rent, and its representatives have sent multiple formal and informal writings regarding that rent.  (ECF Nos. 36-12; 36-14; 36-17; 36-19; 36-20; 36-21; 36-22; 36-23.)

On May 30, 2023, Holly Hill Mall initiated this action by filing a complaint in Alamance County Superior Court, and, thereafter, Dunham's Sports filed a petition for removal of the case to this Court on June 30, 2023.  (ECF No. 1 ¶ 1.)  On July 12, 2023, Holly Hill Mall filed its Amended Complaint (hereinafter "Complaint") alleging breach of contract and seeking Declaratory Relief.  (ECF No. 8.)  On August 22, 2023, Dunham's Sports filed an Amended Answer (hereinafter "Answer") and Amended Counterclaim (hereinafter "Counterclaim") seeking Declaratory Relief.  (ECF No. 11 at 16–17.)  Following discovery, Dunham's Sports filed the instant Motion for Summary Judgment.  (ECF Nos. 33 (Sealed); 35 (Redacted).)  Holly Hill Mall responded that Dunham's Sports is not entitled to summary judgment.  (ECF No. 40.)

## II.   PLAINTIFF'S RESPONSIVE FILING

Rule 83 of the Federal Rules of Civil Procedure provides that "a district court . . . may adopt and amend rules governing its practice."  Fed. R. Civ. P. 83(a)(1).  Such rules "have the force and effect of law, and are binding upon the parties and the court which promulgated them." *Jackson v. Beard*, 828 F.2d 1077, 1078 (4th Cir. 1987) (internal quotation marks omitted) (citation omitted).  The United States District Court for the Middle District of North Carolina

has promulgated such rules which are featured prominently on its website. Local Rule 7.3 provides that "[e]ach motion shall be set out in a separate document" and "[a]ll motions . . . shall be accompanied by a brief." L.R. 7.3(a). This rule also provides that "[a]ll motions shall state with particularity the grounds therefor." L.R. 7.3(b).

Holly Hill Mall's Response (ECF No. 40) was filed as "Holly Hill Mall, LLC's Brief in Response to Dunhams' [sic] Sports' Motion for Summary Judgment." (ECF No. 40 at 1.) Yet in the body of the document, Holly Hill Mall requests "partial summary judgment on its claim for breach of contract and summary judgment on [Dunham's Sports'] Motion for Summary Judgment." (*Id.*) Dunham's Sports made only one additional filing, (ECF No. 46), in response to Holly Hill Mall's filing (ECF No. 40). Dunham's Sports' brief, (ECF No. 46), was delineated as a "Reply Brief in Further Support of Dunham's Sports' Motion for Summary Judgment." (ECF No. 46 at 1.)

Holly Hill Mall's filings suffer from the following Local Rules violations and defects. Holly Hill Mall's purported motion for partial summary judgment was included in the same document as its Response to Dunham's Sports's Motion for Summary Judgment. (ECF No. 40); *see also* L.R. 7.3(a). Holly Hill Mall's purported motion for summary judgment was submitted without any separate explanation or accompanying brief as required by the Local Rules. (ECF No. 40); *see also* L.R. 7.3(a)–(b). Further, Holly Hill Mall, after Dunham's Sports did not respond in opposition to their purported motion for summary judgment, did not object or ask this Court for leave to make additional filings. For these reasons, Holly Hill

7

Mall's purported motion for summary judgment will be construed as it was filed, which was as a Response to Dunham's Sports' Motion for Summary Judgment.[6] L.R. 7.3(k).

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Defendant's Motion for Summary Judgement Under Rule 56(a)

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations omitted) (internal citations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the nonmoving party would prevail at trial. *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S.

---

[6] Under Rule 56(f) this Court has the authority to grant a motion for summary judgment *sua sponte* when there is no cross-motion filed by the nonmovant. Fed. R. Civ. P. 56(f). Plaintiff also asked for this remedy in its filing. (ECF No. 40 at 1.) This Court declines to grant this relief given the limited evidence and briefing from Plaintiff and lack of notice. *Moore v. Equitrans, L.P.*, 27 F.4th 211, 224 (4th Cir. 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)).

8

317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (additional citation omitted). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Celotex*, 477 U.S. at 324.

In a matter involving contract interpretation, "summary judgment is only appropriate 'when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence.'" *Sheridan v. Nationwide Ret. Sols., Inc.*, 313 F. App'x 615, 617 (4th Cir. 2009) (quoting *Washington Metro. Area Transit Auth. v. Potomac Invest. Props., Inc.,* 476 F.3d 231, 235 (4th Cir. 2007) (internal citation omitted)). "[T]he first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *Goodman v. Resol. Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993); *accord id.* If the Court finds that "the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Goodman*, 7 F.3d at 1126. If the Court determines the contract is ambiguous, "it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the

interpretative issue, grant summary judgment on that basis." *Id.* (citing *Jaftex Corp. v. Aetna Cas. and Sur. Co.,* 617 F.2d 1062, 1063 (4th Cir. 1980)). If, when resorting to the extrinsic evidence, the Court still finds "genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Id.*

Defendant filed a Motion for Summary Judgment arguing that it is entitled to Summary Judgement as to Holly Hill Mall's claims and its counterclaim. (ECF No. 35 at 15, 22.) Defendant argues that Holly Hill Mall's claim for Breach of Contract fails as a matter of law because: (1) Dunham's Sports' interpretation of the Co-Tenancy Clause controls; and (2) under this interpretation, Dunham's Sports did not breach its contract obligations. (*See id.* at 15–16, 19, 21, 22.) Because Dunham's Sports argues it was entitled to pay reduced rent it further argues that it, rather than Holly Hill Mall, is entitled to Declaratory Relief. (*Id.* at 21–22.) Holly Hill Mall counters that Dunham's Sports is not entitled to summary judgement on either party's claims. (ECF No. 40 at 8, 9, 23.) Holly Hill Mall argues that the plain language interpretation of the Co-Tenancy Clause is controlling, and this interpretation does not give Dunham's Sports the right to reduce its rent. (ECF No. 40 at 8–9.)

> 1. <u>Dunham's Sports fails to show that there are no genuine issues of material fact that remain related to Holly Hill Mall's Breach of Contract claim.</u>

The elements of a breach of contract claim under North Carolina law are: first, the existence of a valid contract; and second, a breach of the terms of that contract. *Recon Grp. LLP v. Lowe's Home Ctrs. LLC*, No. 5:23-CV-00163-KDB-DCK, 2024 WL 3658846, at *4 (W.D.N.C. Aug. 5, 2024) (citations omitted). "Non-performance of a valid contract is a breach thereof . . . unless the person charged . . . shows some valid reason which may excuse the non-

10

performance; and the burden of doing so rests upon him." *Cater v. Barker*, 617 S.E.2d 113, 117 (N.C. Ct. App. 2005), *aff'd*, 625 S.E.2d 778 (N.C. 2006) (internal quotation marks omitted) (quoting *Blount–Midyette v. Aeroglide Corp.*, 119 S.E.2d 225, 228 (N.C. 1961) (internal quotation omitted in original)). The parties agree that a valid lease governed the relationship between them from 2012 until the present. (*See* ECF Nos. 8 ¶ 59; 11 ¶ 59.) With no arguments to the contrary, the Court concludes that a valid contract exists, that is the Lease, and it governs the relationship between the parties. The second element, breach, is the object of dispute between the parties.

First, both parties argue that the Co-Tenancy Clause in the Lease is unambiguous. (ECF Nos. 35 at 16–19; 40 at 8–10.) Dunham's Sports argues that on July 13, 2020, 180 days after Sears ceased operations in the Shopping Center, it was entitled to pay reduced rent and remains entitled to pay reduced rent because no replacement tenants have the same indoor square footage as Sears. (*See* ECF No. 35 at 11.) Holly Hill Mall responds that the plain language of Co-Tenancy Clause unambiguously does not allow rent reduction; it allows Dunham's Sports to terminate its lease and pay reduced rent for the time it remains in possession of the premises. (ECF No. 40 at 10.)

Whether the Co-Tenancy Clause is to be interpreted as Dunham's Sports desires or Holly Hill Mall desires is the issue of fact that must be determined in this suit; such a dispute by its nature often precludes this Court's ability to grant summary judgment. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001) (noting that "disputes over facts that affect the outcome of the suit under the governing law . . . preclude[s] the entry of summary judgment.") (citing *Liberty Lobby*, 477 U.S. at 247–48). Although both parties argue the Co-Tenancy Clause is unambiguous, both parties also argue that it leads to different results: unjustified breach of

11

contract on the one hand and lawful exercise of an option on the other. (ECF Nos. 35 at 11; 40 at 10.) This disagreement between the parties suggests contract ambiguity. *Dockery v. Quality Plastic Custom Molding, Inc.*, 547 S.E.2d 850, 852(N.C. Ct. App. 2001) ("The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." (quoting *St. Paul Fire & Marine Ins. Co. v. Freeman–White Assoc., Inc.*, 366 S.E.2d 480, 484 (N.C. 1988))). Despite this Court's obligation to view the facts in the light most favorable to the non-movant, in this case Holly Hill Mall, the Court is unable to conclude that either party's interpretation of the Co-Tenancy Clause is controlling. *See Hooven-Lewis*, 249 F.3d at 265.

In addition, the plain language of the contract does not manifestly align with Dunham's Sports' interpretation of the Lease. Under North Carolina law, when a court is tasked to interpret a contract, "[i]t must be presumed the parties intended what the language used clearly expresses . . . and the contract must be construed to mean what on its face it purports to mean." *Hartford Accident & Indem. Co. v. Hood*, 40 S.E.2d 198, (N.C. 1946) (citations omitted). On its face, the language of the Co-Tenancy Clause is unclear, and it is difficult to discern when the remedies it offers are invoked. (ECF No. 36-6 at 9.) Likewise, one cannot read the Co-Tenancy Clause and straightforwardly conclude, as Dunham's Sports desires, that Dunham's Sports is entitled to *either* terminate the Lease *or* receive rent reduction. (*Id.*) To accommodate either party's reading of the Co-Tenancy Clause, a strained reading of the word "furthermore," as utilized in the clause, is required. (*Id.*) Also, this reading would allow Dunham's Sports to reduce its rent at its option at virtually *any time* and perhaps *multiple* times. (*Id.*) Indeed, this reading would allow Dunham's Sports to invoke rent reduction whenever

12

Co-Tenants cease operations in the Shopping Center. (*Id.*) It would also allow Dunham's Sports to invoke rent reduction whenever, in its view, its Co-Tenant is not the right size. (*Id.*)

Moreover, there is limited evidence to suggest that the parties' current interpretations of the Co-Tenancy Clause reflect their intent at the time the Lease was executed. *See Fredeking v. Triad Aviation, Inc.*, 647 F. Supp. 3d 419, 440 (M.D.N.C. Dec. 27, 2022) (quoting *State v. Philip Morris USA Inc.*, 618 SE.2d 219, 225 (N.C. 2005)). Based on this Court's review of the record, Dunham's Sports has provided one exhibit that suggests that Holly Hill Mall understood the Co-Tenancy Clause as Dunham's Sports interprets it. (ECF No. 36-3.) In a letter to Dunham's Sports from Holly Hill Mall's former counsel, the Co-Tenancy Clause, which was still being negotiated, was stated to contain a "termination **and or** rent reduction clause." (*Id.* at 2 (emphasis added).) This letter was dated November 12, 2010, and was responding to Dunham's Sports' interest in leasing space in the Shopping Center. (*Id.*) The remaining evidence regarding interpretation of the contract arose at the time of the rent dispute or during litigation. Accordingly, this Court finds that there are genuine issues of material fact as to the meaning of the Co-Tenancy Clause, and it is therefore ambiguous. *See Goodman*, 7 F.3d at 1126. Therefore, this Court cannot properly interpret the contract as a matter of law, and is unable, therefore, to grant summary judgment. *See id.*

As earlier stated, summary judgment may be granted when reviewing an ambiguous contract if the extrinsic evidence from the record allows the Court to determine the dispositive interpretative issue as a matter of law. *Goodman*, 7 F.3d at 1126. However, if the Court still finds genuine issues of material fact regarding the contract's proper interpretation, then interpretation must be left to the trier of fact. *Id.* Defendant argues that if this Court finds that the Co-Tenancy Clause is ambiguous, the Court "should still grant summary judgement

[to Dunham's Sports] because all the extrinsic evidence supports Dunham's Sports' interpretation." (ECF No. 35 at 19.)  Dunham's Sports points to the parties' course of dealing, arguing that "Dunham's Sports acted consistent with its current interpretation of the Lease by immediately invoking its rent reduction remedy . . . and repeatedly articulating its interpretation of the Co-Tenancy Clause." (*Id.* (citing ECF Nos. 36-7, 36-13, 36-18).) Dunham's Sports further argues that "Holly Hill Mall's course of dealing is entirely inconsistent with its current interpretation of the Co-Tenancy Clause," (*Id.* (emphasis in original)), and "Holly Hill Mall admits it has no extrinsic evidence to support its interpretation." (*Id.* at 20.)  Holly Hill Mall concedes that it finds "[e]xtrinsic evidence . . . unhelpful to determine the [Co-Tenancy Clause's] meaning." (ECF No. 40 at 11.)  Holly Hill Mall also responds that its course of dealing did not contradict its "plain language" interpretation of the Co-Tenancy Clause and the common law rules of construction also favor its interpretation of the Clause. (*Id.* at 11–12, 12.)

There are facts before this Court that suggest that the Co-Tenancy Clause is reasonably susceptible to both parties' stated interpretation, making the Clause ambiguous. *See Longphre v. KT Fin., LLC*, 898 S.E.2d 354, 357 (N.C. Ct. App. 2024) (quoting *Philip Morris*, 685 S.E.2d at 96 ((internal citations omitted)). The Court acknowledges Dunham's Sports' argument that the parties' course of dealing supports its contention that both parties operated under the same interpretation of the Co-Tenancy Clause. (ECF No. 35 at 19.)  However, upon review of the record evidence, this Court cannot come to the same conclusion. *See Hodgin v. Brighton*, 674 S.E.2d 444, 446 (N.C. Ct. App. 2009) (noting that a court "may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein" (internal citations omitted)).  When reviewing a summary

14

judgment motion, this Court may only use extrinsic evidence to interpret an ambiguous contract as a matter of law when that evidence is dispositive of the interpretive issue. *See Goodman*, 7 F.3d at 1126. The extrinsic evidence before this Court does not so resolve the Co-Tenancy Clause's interpretation.

Once Dunham's Sports invoked its alleged right to reduce its rent obligations, the course of dealing between the parties over the four years that followed only seems to show the depth of the parties' disagreement about the parties' interpretations of the Lease. (ECF Nos. 36-12, 36-13; 36-14; 36-17, 36-18; 36-19; 36-20; 36-23.) This is precisely the scenario in which summary judgment is not appropriate, "when there are conflicting versions of the events giving rise to the action." *Griffith v. Glen Wood Co., Inc.*, 646 S.E.2d 550, 554 (N.C. Ct. App. 2007) (citation omitted); *accord Krider v. Marshall*, 11 F. App'x. 217, 218 (4th Cir. 2001) (citing *Anderson*, 477 U.S. at 250). Summary judgment is also inappropriate when extrinsic evidence, like that which has been submitted to this Court, "is subject to conflicting interpretations, or where reasonable [persons] might differ as to the significance of any particular piece of evidence." *Gregorino v. Charlotte–Mecklenburg Hosp. Auth.,* 468 S.E.2d 432, 433 (N.C. Ct. App. 1996) (citing *Smith v. Currie,* 253 S.E.2d 645, 647, *review denied* 257 S.E.2d 219 (N.C. 1979)); *see also Celotex*, 477 U.S. at 325. Accordingly, the extrinsic evidence available does not resolve the interpretive issue that arises from the ambiguous language of the Co-Tenancy Clause. This issue must be resolved by the trier of fact. *Mayo v. N. Carolina State Univ.*, 608 S.E.2d 116, 120 (N.C. Ct. App. 2005), *aff'd*, 619 S.E.2d 502 (N.C. 2005) (citing *Crider v. Jones Island Club, Inc.*, 554 S.E.2d 863, 866 (N.C. Ct. App. 2001)).

The Court is not persuaded that the Co-Tenancy Clause is unambiguous or that it must be unambiguously read in one party's favor. *See Goodman*, 7 F.3d at 1126. Further, Defendant

15

has not resolved the Co-Tenancy Clause's ambiguity by way of extrinsic evidence. *See id.* Because Dunham's Sports has failed to demonstrate that a reasonable juror could not find that it violated the terms of the Lease, it is not entitled to summary judgment on Holly Hill Mall's breach of contract claim. *See Hooven-Lewis*, 249 F.3d at 265 (quoting *Celotex,* 477 U.S. at 322).

> 2. <u>Dunham's Sports fails to show that it is entitled to summary judgment on Holly Hill Mall's or its own claim for Declaratory Relief</u>

"The propriety of summary judgment in a declaratory judgment action is governed by the same considerations applicable to any other action and therefore may be entered when there is no issue of material fact and a party is entitled to prevail as a matter of law." *Smith v. HBE Corp.*, 655 F. Supp. 59, 63 (E.D.N.C. Apr. 18, 1986), *aff'd*, 811 F.2d 1505 (4th Cir. 1987) (citing *Blades v. City of Raleigh*, 187 S.E.2d 35, 43 (N.C. 1972)); *see also Threatte v. Threatte*, 296 S.E.2d 521, 522 (N.C. Ct App. 1982) (citing *Blades*, 187 S.E.2d at 43). Both parties' claims for Declaratory Relief ask that this Court validate its interpretation of the Co-Tenancy Clause over the other's. (ECF No. 35 at 22–23.) Further, the parties ask that this Court, after determining the controlling interpretation of the Co-Tenancy Clause, make additional declarations related to any alleged past due rent and interest on that rent. (*Id.* at 22.) Because this Court has concluded that neither party has established as a matter of law that its interpretation of the Co-Tenancy Clause is controlling, summary judgment on the declaratory relief claims likewise must also be denied.

**B.     Holly Hill Mall's Unaddressed Defenses to Dunham's Sports Counterclaim**

Under Federal Rule of Civil Procedure 56(e), this Court is entitled to consider a fact to be undisputed or grant summary judgment when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)." Fed. R. Civ. P. 56(e); (e)(2)-(3). However, when a party has failed to respond to a summary

16

judgment motion, the court should only grant summary judgment if the movant "is entitled to it." Fed. R. Civ. P. 56(e)(3). To determine if it is appropriate, the district court must review the record to determine whether the movant is entitled to summary judgment on those unaddressed issues. *Cf. Riddle v. Auto-Owners Ins. Co.*, No. 2:08-CV-1-F, 2009 WL 2151386, at *3 (E.D.N.C. July 17, 2009) (citing *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).

As earlier stated, Dunham's Sports' Answer asserted a counterclaim seeking Declaratory Relief. (ECF No. 11 at 16–17.) Holly Hill Mall asserted ten defenses in its Answer to Dunham's Sports' counterclaim. (ECF No. 12 at 6–7.) Following discovery, Holly Hill Mall submitted a Response to Dunham's Sports Motion for Summary Judgment that only reasserted three of those ten defenses. (ECF No. 40 at 21–23.) Dunham's Sports then submitted a reply brief which argued it was entitled to summary judgment on seven of Holly Hill Mall's defenses to its counterclaim. (ECF No. 46 at 8–9.) Dunham's Sports argued that in Holly Hill Mall's Response, (ECF No. 40), it "abandoned" these defenses and therefore Dunham's Sports argued it was "entitled to summary judgment" on those issues. (ECF No. 46 at 8.) However, Dunham's Sports did not show that Holly Hill Mall's "abandon[ment]" of these defenses entitled it to judgment as a matter of law on those issues, it simply noted that they were left unexamined in Holly Hill Mall's Response. (ECF No. 46 at 8–9); *see also Custer*, 12 F.3d at 416 ("Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(a)). Therefore, in the absence of evidence that would demand the

17

contrary, this Court will allow Holly Hill Mall to proceed with all the defenses it pled in its Answer to Dunham's Sports' Counterclaim.

## IV. CONCLUSION

Accordingly, this Court finds that there are genuine issues of fact regarding the Co-Tenancy Clause and how it is to be properly interpreted. Therefore, Defendant has not established that it is entitled to summary judgment on Plaintiff's claims for relief from Dunham's Sports alleged breach of contract and for Declaratory Relief as a matter of law. Neither has Dunham's Sports established that it is entitled to summary judgment on its counterclaim for Declaratory Relief.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 33 (Sealed)), is **DENIED**.

This, the 31st day of January 2025.

/s/ Loretta C. Biggs
United States District Judge
